UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 16-20480-Civ-GAYLES
       (14-20390-Cr-GAYLES)
MAGISTRATE JUDGE P.A. WHITE

MANUEL DEJESUS LORA,

     Movant,

vs.                                      REPORT OF
                                 MAGISTRATE JUDGE

UNITED STATES OF AMERICA,

     Respondent.
_____/

## I. **Introduction**

    This matter is before the Court on the movant's pro se motion to vacate, filed pursuant to 28 U.S.C. §2255, attacking the constitutionality of his convictions and sentences, entered following a guilty plea in **case no. 14-20390-Cr-Gayles.**

    This cause has been referred to the undersigned for consideration and report pursuant to 28 U.S.C. §636(b)(1)(B),(C); S.D.Fla. Local Rule 1(f) governing Magistrate Judges; S.D. Fla. Admin. Order 2003-19; and Rules 8 and 10 Governing Section 2255 Cases in the United States District Courts.

    Before the Court for review are the movant's §2255 motion (Cv-DE#1), the Presentence Investigation Report ("PSI"), Statement of Reasons ("SOR"), along with all pertinent portions of the underlying criminal file, the factual proffer (Cr-DE#48), together with the change of plea (Cr-DE#78) and sentencing (Cr-DE#75) transcripts. This court also has the Government's response to this court's order to show cause and the movant's reply thereto. (Cv-DE#

6, 7).

## II.  <u>Claims</u>

Construing the §2255 motion liberally as afforded *pro se* litigants pursuant to <u>Haines v. Kerner</u>, 404 U.S. 519 (1972), the movant raises the following grounds for relief:

    (1) The District Court committed a procedural error during sentencing when applying §3553(a) factors.

    (2) The District Court erred in failing to conduct an evidentiary hearing regarding the substance found in his possession.

    (3) Counsel was ineffective in failing to convince him to proceed to trial.

    (4) The movant should be resentenced under <u>United States v. Johnson</u>, 135 S.Ct. 2551 (2015).

## III.  <u>Factual Background and Procedural History</u>

### A. <u>Facts of the Offense</u>

The stipulated factual proffer reveals as follows. (Cr-DE#29).

    If the following case were to proceed to trial, the United States would the following facts, among others, prove beyond a reasonable doubt:

    On May 9, 2014, law enforcement was conducting surveillance of the defendant, Manuel Dejesus Lora, a/k/a "Emilio Encarnacion Melendez," in connection with an ongoing investigation. The defendant was observed driving from his place of work to his residence, both of which are in the Southern District of Florida. When he arrived at his residence, he met with his codefendant Anibal Oller, in the parking lot of his apartment complex. After

a brief meeting, the defendant entered the apartment complex carrying a parcel, before emerging from the residence carrying a different parcel. The defendant approached Oller's vehicle and gave Oller the parcel he had brought from inside his apartment. The defendant then went inside. At that point, Oller drove away from the apartment complex and was stopped by law enforcement. Inside Oller's vehicle, law enforcement uncovered approximately eight kilogram-sized bricks of cocaine, several smaller plastic bags also containing cocaine, and approximately $35,000 in United States currency. Oller was placed under arrest, but did not make any statements.

Simultaneously, law enforcement approached the defendant's residence. While they were approaching the defendant's residence, the defendant's son, Christopher Lora, was stopped by law enforcement as he ran out of the residence and through the parking lot. In Christopher Lora's possession was slightly less than two kilograms of cocaine. The defendant was arrested by law enforcement. A subsequent search of the defendant's apartment uncovered two firearms, a large amount of ammunition, and an additional amount of United States currency. In a post-<u>Miranda</u> statement, the defendant admitted that the cocaine belonged to him, he was a cocaine dealer, and the firearms were his. Both of the firearm s and a11 of the ammunition had been manufactured outside the state of Florida, and thus traveled in interstate or foreign commerce prior to the defendant's possession. He acknowledged being previously convicted for a drug trafficking crime and having been previously removed from the United States to the Dominican Republic. Christopher Lora also stated that the cocaine belonged to his father, the defendant. The defendant, who had been living under the assumed name "Emilio Encamacion Melendez," further stated that he had received cocaine from Anibal Oller on numerous occasions previously.

A search of the criminal indices uncovered that the defendant was in fact a convicted felon and had not had his right to possess a firearm restored. Further, the defendant had been removed as a result of a conviction for a drug trafficking crime and had not received the permission of the Attorney General or his successor, the Secretary of Homeland Security, to return to the United States.

(Cv DE# 48).

## B.  Indictment, Pre-trial Proceedings, Conviction, Sentencing, and Direct Appeal

On May 30, 2014, movant was charged in a four-count indictment with conspiracy to possess with the intent to distribute five kilograms or more of cocaine, in violation of Title 21, United States Code, Section 846; possession with the intent to distribute five kilograms or more of cocaine in violation of Title 21, United States Code, Section 841(a)(1); being in possession of firearm after sustaining a felony conviction, in violation of Title 18, United States Code, Section 922(g)(1); and illegal reentry into the United States by an aggravated felon, in violation of Title 8, United States Code, Section 1326(a) and (b)(2) (CR DE# 18).

On August 8, 2014, a change of plea proceeding, pursuant to Fed.R.Cr.P. 11, was conducted by the District Court. (Cr-DE#78). After movant was given the oath, the movant provided background information, including his age, and level of education. (Cr-DE#78:2-4). He denied ever being treated for any mental illness. (Id.:4). He also denied being treated for any type of addiction to drugs of any kind. (Id.). Next, he also denied currently being under the influence of any medication, prescription, or other substance. (Id.).

The movant affirmed that he wanted to plead guilty to counts 1, 3, and 4. In exchange, the government would move to dismiss count 2 at sentencing. (Id.:3).

Regarding the rights he was waiving by entering into a guilty plea, movant acknowledged he was giving up his right to a jury

4

trial, his right to challenge the government's evidence at trial, to call defense witnesses to testify on his own behalf, present his own evidence, and testify on his own behalf at trial. (Id.:5). Movant further understood that he was also waiving his right to appeal the convictions, and that had he proceeded to trial and been found guilty, he would have been able to prosecute a direct appeal, challenging the constitutionality of his convictions. (Id.:5). He also understood that if he is not a United States citizen, the plea would subject him to deportation or removal proceedings. (Id.).

The District Court next informed the movant that an adjudication of guilty could deprive him of valuable civil rights such as the right to vote, hold public office, serve on a jury, possess a firearm, reside in public housing, keep or maintain a professional license, etc. (Id.:6).

Next, movant confirmed he had reviewed the case and evidence against him with counsel, and was satisfied with the representation and advice provided by his lawyer. (Id.:6-8). Regarding his decision to plead guilty, the movant acknowledged he had discussed the issue thoroughly with counsel. (Id.). He also confirmed that he discussed the sentencing guidelines with his counsel and understood that his attorney could only provide him with her best assessment on how the guidelines might apply. (Id.). Movant also understood that the court could impose any sentence within and up to the statutory maximum for the offenses of conviction and that the movant would not be able to withdraw his plea solely as a result of the sentence imposed. (Id.:7).

With respect to the factual proffer, the movant stated that the facts contained therein were accurate. (Id.:8). The movant then plead guilty to the three charges because he was in fact guilty.

5

(Id.:9). The court informed him that he could be facing a minimum term of ten years and up to life imprisonment. He stated that he understood. (Id.:10). The movant's counsel informed the court that the parties had not yet agreed on the amount of drugs and that this issue would be determined at sentencing. (Id.:11). The movant stated that he understood that the amount determination would have an impact on his sentence. (Id.:12).

The PSI was prepared (and altered following sentencing) to reveal as follows. With respect to the conspiracy to distribute cocaine and felon in possession charge, the base offense level was set at a level 26, because the court determined at sentencing that the movant was responsible for 1.7 kilograms of cocaine. (PSI ¶27). Because dangerous firearms were possessed, the offense level was increased by two levels, § 2D1.1(b)(1). (PSI ¶28). With respect to illegal re-entry, a base offense level of 8 was entered. (PSI ¶33). Because the defendant was previously deported, after a conviction for a felony drug trafficking offense for which the sentence imposed exceeded 13 months, the offense level was increased by 16 levels if the conviction received criminal history points, §2L1.2(b)(1)(A). (PSI ¶34). The adjusted offense level was set at 24. (PSI ¶37). After applying a multiple count adjustment, the greater of the adjusted offense levels was 28. (PSI ¶39). A two level increase in offense level was noted. (PSI ¶41). The combined adjusted offense level was set at 30. (PSI ¶42).Three levels were then deducted from the base offense level, based on movant's timely acceptance of responsibility, resulting in a total adjusted base offense level 27. (PSI ¶¶44-46).

The probation officer next determined that movant had three criminal history points, resulting in a criminal history category II. (PSI ¶51).

6

Based on a total offense level 27 and a criminal history category II, the movant's advisory guideline range was set at 78 months at the low end and 97 months imprisonment at the high end. (PSI ¶84). Statutorily, as to Count One, the term of imprisonment was 5 to 40 years, 21 U.S.C. § 841(b)(1)(B); as to Count Three, the term of imprisonment was zero to ten years, 18 U.S.C. § 922(g)(1); and as to Count Four, the term of imprisonment was zero to 20 years, 8 U.S.C. § 1326(b)(2).(PSI ¶84).

At the sentencing hearing on October 16, 2014, the movant objected to the drug quantity amount that he should be held responsible for, and the District Court agreed, reducing the quantity from 10.5 kilograms to 1.7 kilograms, and reducing the mandatory minimum from 10 years of imprisonment to 5 years of imprisonment (Cr DE# 62; 75 at 9). The movant did not raise any other objections to the PSI or his guilty plea. As a result of the District Court's ruling, the movant's total offense level was reduced to 27, which was further reduced to 25 as a result of a defense request based on the anticipated Sentencing Guidelines amendment dealing with the drug quantity tables (Cr DE# 75 at 10-12). The movant's new guidelines range was 63 to 78 months of imprisonment (Cr DE# 75 at 17). After hearing argument from the parties, the Court determined that the guidelines range was insufficient to account for the nature of the offenses involved and the movant's history, and varied upwards to 120 months of imprisonment (Cr DE# 75 at 21; 64). The movant objected to the reasonableness of his sentence.

The movant prosecuted a direct appeal, challenging the substantive and procedural reasonableness of his sentence. (Cr-DE#65, 90). On **October 1, 2015,** the Eleventh Circuit Court of Appeals affirmed the sentence as substantively and procedurally

7

reasonable. <u>United States v. Lora</u>, 627 Fed. Appx. 881 (11th Cir. 2015). Review of the record reveals that no petition for certiorari review was filed.

Consequently, for purposes of the federal one-year limitations period, the judgment of conviction in the underlying criminal case become final on **Wednesday, December 30, 2015**, when the 90-day period for seeking certiorari review expired upon conclusion of the movant's direct appeal.[1] At the latest, the movant was required to file this motion to vacate within one year from the time the judgment became final, or no later than **December 30, 2016.** <u>See Griffith v. Kentucky</u>, 479 U.S. 314, 321, n.6 (1986); <u>see also</u>, <u>See Downs v. McNeil</u>, 520 F.3d 1311, 1318 (11th Cir. 2008)(<u>citing Ferreira v. Sec'y, Dep't of Corr's</u>, 494 F.3d 1286, 1289 n.1 (11th Cir. 2007)(this Court has suggested that the limitations period should be calculated according to the "anniversary method," under which the limitations period expires on the anniversary of the date it began to run); <u>accord</u> <u>United States v. Hurst</u>, 322 F.3d 1256, 1260-61 (10th Cir. 2003); <u>United States v. Marcello</u>, 212 F.3d 1005, 1008-09 (7th Cir. 2000)). Applying the anniversary method to this case means movant's limitations period is due to expire on **December 30, 2016.**[2] Since the one-year deadline fell on a Saturday, the movant had until **Monday, January 2, 2017**, within which to timely

---

[1] The Supreme Court has stated that a conviction is final when a judgment of conviction has been rendered, the availability of appeal exhausted, and the time for a petition for certiorari elapsed or a petition for certiorari finally denied. <u>Griffith v. Kentucky</u>, 479 U.S. 314, 321, n.6 (1986); <u>accord</u>, <u>United States v. Kaufmann</u>, 282 F.3d 1336 (11th Cir. 2002).

[2] Under <u>Fed.R.Civ.P.</u> 6(a)(1), "in computing any time period specified in ... any statute that does not specify a method of computing time ... [the court must] exclude the day of the event that triggers the period[,] count every day, including intermediate Saturdays, Sundays, and legal holidays[, and] include the last day of the period," unless the last day is a Saturday, Sunday, or legal holiday. Where the dates falls on a weekend, the Undersigned has excluded that day from its computation.

file this §2255 motion to vacate.

The movant signed his §2255 motion to vacate on **November 30, 2015**. (Cv-DE#1). Absent evidence to the contrary, it is presumed that the movant filed the motion, in accordance with the mailbox rule, on that date, having signed the motion and handed it to prison authorities for mailing.[3] (Cv-DE#1:6). However, the petition was not filed until February 9, 2016. Even applying this later date, the petition is timely as it was filed before January 2, 2017.

## IV.   Standard of Review

Because collateral review is not a substitute for direct appeal, the grounds for collateral attack on final judgments pursuant to §2255 are extremely limited. A prisoner is entitled to relief under §2255 if the court imposed a sentence that (1) violated the Constitution or laws of the United States, (2) exceeded its jurisdiction, (3) exceeded the maximum authorized by law, or (4) is otherwise subject to collateral attack. See 28 U.S.C. §2255(a); McKay v. United States, 657 F.3d 1190, 1194 n.8 (11th Cir. 2011). "Relief under 28 U.S.C. §2255 'is reserved for transgressions of constitutional rights and for that narrow compass of other injury that could not have been raised in direct appeal

---

[3]"Under the prison mailbox rule, a *pro se* prisoner's court filing is deemed filed on the date it is delivered to prison authorities for mailing." Williams v. McNeil, 557 F.3d 1287, 1290 n.2 (11th Cir. 2009); see Fed.R.App. 4(c)(1)("If an inmate confined in an institution files a notice of appeal in either a civil or a criminal case, the notice is timely if it is deposited in the institution's internal mail system on or before the last day for filing."). Unless there is evidence to the contrary, like prison logs or other records, a prisoner's motion is deemed delivered to prison authorities on the day he signed it. See Washington v. United States, 243 F.3d 1299, 1301 (11th Cir. 2001); Adams v. United States, 173 F.3d 1339 (11th Cir. 1999) (prisoner's pleading is deemed filed when executed and delivered to prison authorities for mailing).

and would, if condoned, result in a complete miscarriage of justice.'" Lynn v. United States, 365 F.3d 1225, 1232 (11th Cir. 2004)(citations omitted). It is also well-established that a §2255 motion may not be a substitute for a direct appeal. Id. at 1232 (citing United States v. Frady, 456 U.S. 152, 165, 102 S.Ct. 1584, 1593, 71 L.Ed.2d 816 (1982)). The "fundamental miscarriage of justice" exception recognized in Murray v. Carrier, 477 U.S. 478, 496 (1986), provides that it must be shown that the alleged constitutional violation "has probably resulted in the conviction of one who is actually innocent . . . "

The Eleventh Circuit promulgated a two-part inquiry that a district court must consider before determining whether a movant's claim is cognizable. First, a district court must find that "a defendant assert[ed] all available claims on direct appeal." Frady, 456 U.S. at 152; McCoy v. United States, 266 F.3d 1245, 1258 (11th Cir. 2001); Mills v. United States, 36 F.3d 1052, 1055 (11th Cir. 1994). Second, a district court must consider whether the type of relief the movant seeks is appropriate under Section 2255. This is because "[r]elief under 28 U.S.C. §2255 is reserved for transgressions of constitutional rights and for that narrow compass of other injury that could not have been raised in direct appeal and would, if condoned, result in a complete miscarriage of justice." Lynn, 365 F.3d at 1232-33 (quoting Richards v. United States, 837 F.2d 965, 966 (11th Cir. 1988)(internal quotations omitted)).

If a court finds a claim under Section 2255 to be valid, the court "shall vacate and set the judgment aside and shall discharge the prisoner or resentence him or grant a new trial or correct the sentence as may appear appropriate." 28 U.S.C. §2255. To obtain this relief on collateral review, a petitioner must "clear a

significantly higher hurdle than would exist on direct appeal." Frady, 456 U.S. at 166, 102 S.Ct. at 1584 (rejecting the plain error standard as not sufficiently deferential to a final judgment). Under Section 2255, unless "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief," the court shall "grant a prompt hearing thereon, determine the issues and make findings of fact and conclusions of law with respect thereto." However, "if the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing." Schriro v. Landrigan, 550 U.S. 465, 474, 127 S.Ct. 1933, 167 L.Ed.2d 836 (2007). See also Aron v. United States, 291 F.3d 708, 715 (11th Cir. 2002)(explaining that no evidentiary hearing is needed when a petitioner's claims are "affirmatively contradicted by the record" or "patently frivolous"). As indicated by the discussion below, the motion and the files and records of the case conclusively show that movant is entitled to no relief, therefore, no evidentiary hearing is warranted.

## A. Guilty Plea Principles

It is well settled that before a trial judge can accept a guilty plea, the defendant must be advised of the various constitutional rights that he is waiving by entering such a plea. Boykin v. Alabama, 395 U.S. 238, 243 (1969). Since a guilty plea is a waiver of substantial constitutional rights, it must be a voluntary, knowing, and intelligent act done with sufficient awareness of the relevant circumstances and likely consequences surrounding the plea. Brady v. United States, 397 U.S. 742, 748 (1970). See also United States v. Ruiz, 536 U.S. 622, 629 (2002); Hill v. Lockhart, 474 U.S. 52, 56 (1985); Henderson v. Morgan, 426 U.S. 637, 645 n.13 (1976). To be voluntary and knowing, (1) the

11

guilty plea must be free from coercion; (2) the defendant must understand the nature of the charges; and (3) the defendant must know and understand the consequences of his guilty plea. <u>United States v. Moriarty</u>, 429 F.3d 1012, 1019 (11th Cir. 2005)(table); <u>United States v. Mosley</u>, 173 F.3d 1318, 1322 (11th Cir. 1999).

After a criminal defendant has pleaded guilty, he may not raise claims relating to the alleged deprivation of constitutional rights occurring prior to the entry of the guilty plea, but may only raise jurisdictional issues, <u>United States v. Patti</u>, 337 F.3d 1317, 1320 (11th Cir. 2003), <u>cert. den'd</u>, 540 U.S. 1149 (2004), attack the voluntary and knowing character of the guilty plea, <u>Tollett v. Henderson</u>, 411 U.S. 258, 267 (1973); <u>Wilson v. United States</u>, 962 F.2d 996, 997 (11th Cir. 1992), or challenge the constitutional effectiveness of the assistance he received from his attorney in deciding to plead guilty, <u>United States v. Fairchild</u>, 803 F.2d 1121, 1123 (11th Cir. 1986). To determine that a guilty plea is knowing and voluntary, a district court must comply with Rule 11 and address its three core concerns: "ensuring that a defendant (1) enters his guilty plea free from coercion, (2) understands the nature of the charges, and (3) understands the consequences of his plea." <u>Id</u>.; <u>see also</u>, <u>United States v. Frye</u>, 402 F.3d 1123, 1127 (11th Cir. 2005)(<i>per curiam</i>); <u>United States v. Moriarty</u>, 429 F.3d 1012 (11th Cir. 2005).[4]

---

[4]In <u>Moriarty</u>, the Eleventh Circuit specifically held as follows:

> [t]o ensure compliance with the third core concern, Rule 11(b)(1) provides a list of rights and other relevant matters about which the court is required to inform the defendant prior to accepting a guilty plea, including: the right to plead not guilty (or persist in such a plea) and to be represented by counsel; the possibility of forfeiture; the court's authority to order restitution and its obligation to apply the Guidelines; and the Government's right, in a prosecution for perjury, to use against the defendant any statement that

In other words, a voluntary and intelligent plea of guilty made by an accused person must therefore stand unless induced by misrepresentations made to the accused person by the court, prosecutor, or his own counsel. Brady v. United States, 397 U.S. 742, 748 (1970). If a guilty plea is induced through threats, misrepresentations, or improper promises, the defendant cannot be said to have been fully apprised of the consequences of the guilty plea and may then challenge the guilty plea under the Due Process Clause. See Santobello v. New York, 404 U.S. 257 (1971).

### B.   Ineffective Assistance of Counsel Principles

Because the movant suggests in the motion that counsel rendered ineffective assistance, this Court's analysis begins with the familiar rule that the Sixth Amendment affords a criminal defendant the right to "the Assistance of Counsel for his defense." U.S. CONST. amend. VI. To prevail on a claim of ineffective assistance of counsel, a habeas petitioner must demonstrate both (1) that counsel's performance was deficient, and (2) a reasonable probability that the deficient performance prejudiced the defense. Strickland v. Washington, 466 U.S. 668, 687, 694 (1984); Harrington v. Richter, 562 U.S. 86, 104, 131 S.Ct. 770, 788 (2011). See also Premo v. Moore, 562 U.S. 115, 121-22, 131 S.Ct. 733, 739-740 (2011); Padilla v. Kentucky, 559 U.S. 356, 367, 130 S.Ct. 1473, 1482, 176 L.Ed.2d 284 (2010). If the movant cannot meet one of Strickland's prongs, the court does not need to address the other prong. Strickland, 466 U.S. at 697, 104 S.Ct. 2069 (explaining a court need not address both prongs of Strickland if the defendant

---

he gives under oath.

Id.

13

makes an insufficient showing on one of the prongs). <u>See also</u> <u>Butcher v. United States</u>, 368 F.3d 1290, 1293 (11th Cir. 2004); <u>Brown v. United States</u>, 720 F.3d 1316 (11th Cir. 2013).

To show counsel's performance was unreasonable, a defendant must establish that "no competent counsel would have taken the action that his counsel did take." <u>Gordon v. United States</u>, 518 F.3d 1291, 1301 (11th Cir. 2008)(citations omitted); <u>Chandler v. United States</u>, 218 F.3d 1305, 1315 (11th Cir. 2000). With regard to the prejudice requirement, the movant must establish that, but for counsel's deficient performance, the outcome of the proceeding would have been different. <u>Strickland</u>, 466 U.S. at 694. For the court to focus merely on "outcome determination," however, is insufficient; "[t]o set aside a conviction or sentence solely because the outcome would have been different but for counsel's error may grant the defendant a windfall to which the law does not entitle him." <u>Lockhart v. Fretwell</u>, 506 U.S. 364, 369-70, 113 S.Ct. 838, 122 L.Ed.2d 180 (1993); <u>Allen v. Sec'y, Fla. Dep't of Corr's</u>, 611 F.3d 740, 754 (11th Cir. 2010). A defendant therefore must establish "that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." <u>Lockhart</u>, 506 U.S. at 369 (<u>quoting</u> <u>Strickland</u>, 466 U.S. at 687).

In the context of a guilty plea, the first prong of <u>Strickland</u> requires petitioner to show that the plea was not voluntary because he/she received advice from counsel that was not within the range of competence demanded of attorneys in criminal cases, while the second prong requires petitioner to show a reasonable probability that, but for counsel's errors, he/she would have entered a different plea. <u>Hill</u>, 474 U.S. at 56-59. If the petitioner cannot meet one of <u>Strickland</u>'s prongs, the court does not need to address the other prong. <u>Dingle v. Sec'y for Dep't of Corr's</u>, 480 F.3d

1092, 1100 (11th Cir.), <u>cert. den'd</u>, 552 U.S. 990 (2007); <u>Holladay v. Haley</u>, 209 F.3d 1243, 1248 (11th Cir.), <u>reh'g and reh'g en banc den'd by</u>, <u>Holladay v. Haley</u>, 232 F.3d 217 (11th Cir.), <u>cert. den'd</u>, 531 U.S. 1017 (2000).

However, a defendant's sworn answers during a plea colloquy must mean something. Consequently, a defendant's sworn representations, as well as representation of defense counsel and the prosecutor, and any findings by the judge in accepting the plea, "constitute a formidable barrier in any subsequent collateral proceedings." <u>Blackledge v. Allison</u>, 431 U.S. 63, 73-74 (1977); <u>United States v. Medlock</u>, 12 F.3d 185, 187 (11th Cir.), <u>cert. den'd</u>, 513 U.S. 864 (1994); <u>United States v. Niles</u>, 565 Fed.Appx. 828 (11th Cir. May 12, 2014)(unpublished).

A criminal defendant is bound by his/her sworn assertions and cannot rely on representations of counsel which are contrary to the advice given by the judge. <u>See</u> <u>Scheele v. State</u>, 953 So.2d 782, 785 (Fla. 4 DCA 2007)("A plea conference is not a meaningless charade to be manipulated willy-nilly after the fact; it is a formal ceremony, under oath, memorializing a crossroads in the case. What is said and done at a plea conference carries consequences."); <u>Iacono v. State</u>, 930 So.2d 829 (Fla. 4 DCA 2006)(holding that defendant is bound by his sworn answers during the plea colloquy and may not later assert that he committed perjury during the colloquy because his attorney told him to lie); <u>United States v. Rogers</u>, 848 F.2d 166, 168 (11th Cir. 1988)("[W]hen a defendant makes statements under oath at a plea colloquy, he bears a heavy burden to show his statements were false.").

Moreover, in the case of alleged sentencing errors, the movant must demonstrate that there is a reasonable probability that, but

15

for counsel's errors, the result of the proceeding would have been less harsh due to a reduction in the defendant's offense level. <u>Glover v. United States</u>, 531 U.S. 198, 203-04, 121 S.Ct. 696, 148 L.Ed.2d 604 (2001). A significant increase in sentence is not required to establish prejudice, as "any amount of actual jail time has Sixth Amendment significance." <u>Id</u>. at 203.

Furthermore, a §2255 movant must provide factual support for his contentions regarding counsel's performance. <u>Smith v. White</u>, 815 F.2d 1401, 1406-07 (11th Cir.1987). Bare, conclusory allegations of ineffective assistance are insufficient to satisfy the <u>Strickland</u> test. <u>See</u> <u>Boyd v. Comm'r, Ala. Dep't of Corr's</u>, 697 F.3d 1320, 1333-34 (11th Cir. 2012); <u>Garcia v. United States</u>, 456 Fed.Appx. 804, 807 (11th Cir. 2012) (<u>citing</u> <u>Yeck v. Goodwin</u>, 985 F.2d 538, 542 (11th Cir. 1993)); <u>Wilson v. United States</u>, 962 F.2d 996, 998 (11th Cir. 1992); <u>Tejada v. Dugger</u>, 941 F.2d 1551, 1559 (11th Cir. 1991), <u>cert. den'd</u> <u>Tejada v. Singletary</u>, 502 U.S. 1105 (1992); <u>Stano v. Dugger</u>, 901 F.2d 898, 899 (11th Cir. 1990)(<u>citing</u> <u>Blackledge v. Allison</u>, 431 U.S. 63, 74, 97 S.Ct. 1621, 52 L.Ed.2d 136 (1977)); <u>United States v. Ross</u>, 147 Fed.Appx. 936, 939 (11th Cir. 2005).

Finally, the Eleventh Circuit has recognized that given the principles and presumptions set forth above, "the cases in which habeas petitioners can properly prevail ... are few and far between." <u>Chandler</u>, 218 F.3d at 1313. This is because the test is not what the best lawyers would have done or even what most good lawyers would have done, but rather whether some reasonable lawyer could have acted in the circumstances as defense counsel acted. <u>Dingle</u>, 480 F.3d at 1099; <u>Williamson v. Moore</u>, 221 F.3d 1177, 1180 (11th Cir. 2000). "Even if counsel's decision appears to have been unwise in retrospect, the decision will be held to have been

16

ineffective assistance only if it was 'so patently unreasonable that no competent attorney would have chosen it.'" <u>Dingle</u>, 480 F.3d at 1099 (<u>quoting</u> <u>Adams v. Wainwright</u>, 709 F.2d 1443, 1445 (11th Cir. 1983)). The Sixth Circuit has framed the question as not whether counsel was inadequate, but rather counsel's performance was so manifestly ineffective that "defeat was snatched from the hands of probable victory." <u>United States v. Morrow</u>, 977 F.2d 222, 229 (6th Cir. 1992).

## V.  <u>Discussion</u>

In **claim 1**, movant asserts the District Court erred in imposing a two-level increase for possessing a dangerous firearm under §2D1.1(b)(1). See (PSI ¶28). The movant takes issue with the prosecutor's comment that the movant was a drug trafficker. He asserts that he informed the court at sentencing that he planned to turn in his firearm. As a result, the court should not have imposed the two-level increase. (Cv DE# 1:4).

The Court presented clear and articulated reasons for varying upwards sufficient to support the sentence. <u>Rita v. United States</u>, 551 U.S. 338, 356-57 (2007). The Court identified the specific grounds for the variance and relied on facts which were unchallenged. There was no prosecutorial misconduct when the United States represented that the movant "was a drug trafficker," particularly since the movant had just pleaded guilty to possession with the intent to distribute more than one kilogram of cocaine – and his prior record included a conviction for narcotics distribution. The Court was not required to comment on each 3553(a) factor, <u>United States v. Robles</u>, 408 F.3d 1324, 1328 (11th 2005), and as such committed no error. In addition, the movant challenged the substantive and procedural reasonableness of the  sentence were

already challenged on direct appeal, and the Eleventh Circuit ruled that the District Court did not abuse its discretion or commit any procedural errors during the sentencing hearing.

Under **claim 2**, the District Court erred in failing to conduct an evidentiary hearing regarding the substance found in his possession. The movant appears to be claiming either that the substance he had in his possession was not cocaine or that the Government never tested it and, thus, he is entitled to an evidentiary hearing on that matter. (Cv DE# 1:4).

As a preliminary matter, the movant is procedurally barred from raising this claim, as he failed to raise it on direct appeal; further, he fails to provide any legal support for this claim, other than citing to <u>Bousley v. United States</u>, 523 U.S. 614 (1998), which has no relevance to his claim.

To the extent Lora is claiming that the substance was not cocaine, his claim fails due to the factual proffer that he signed. The proffer stated, on multiple occasions, that the substance was cocaine. (CR DE#48:1-2). During the change of plea hearing, when asked by the Court whether the factual proffer was true, the movant said under oath that it was (CR DE#, 78:8). The movant also confirmed that he was pleading guilty because he was, in fact, guilty (<u>Id.</u>:9). Facts, to which the movant did not object, contained within the PSI also confirmed that the substance was cocaine (PSI ¶¶8, 9, 11, 13, 18). In the movant's "acceptance of responsibility" statement to the probation officer, he wrote: "As I told the agents, I was dealing in drugs and had clients for whom I was buying the drugs. Mr. Oller was my supplier of drugs. I had contacted him to purchase cocaine. He was selling the cocaine for $28,000 per kilo. I didn't have enough for exactly 2 kilos so I

gave Oller $35,000 for under 2 kilos" (PSI ¶22). Finally, in the material disclosed to the defense pursuant to the standing discovery order, there is an agent's report stating that the substance tested positive for the presence of cocaine. The record strongly supports the conclusion that the substance at issue was, in fact, cocaine.

To the extent the movant claiming that the Government never tested the cocaine, he is incorrect from a factual basis, as identified above. However, even assuming that the material included in discovery is insufficient to establish that fact, the movant's claim fails, as he pleaded guilty and signed a factual proffer acknowledging that the substance was, in fact, cocaine. The Government is not required to provide any specific form of proof; all that is required is that the elements of the offense are met. The movant stated that the substance was cocaine, and he pleaded guilty to that offense.  Had the movant wished to contest the nature of the substance, he was not required to enter a plea of guilty, and he could have forced the Government to prove the case before a jury, as instructed by the District Court. (CR DE#78 at 5).  The movant is not entitled to relief under this claim.

Under **claim 3**, the movant asserts that counsel was ineffective in failing to convince him to proceed to trial.  The movant claims that he asked his attorney to go to trial because the Government had not produced documentation as to whether or not the substance in question was an illegal narcotic, and that his attorney said: "Plead guilty or I quit" (Cv DE# 1:4).

The movant's claim is undermined by the following exchange at his change of plea hearing, during which he was under oath:

19

COURT: Has anyone promised you anything in order to get you to enter into this guilty plea to Counts 1, 3, and 4?

LORA: No.

COURT: Has anyone promised you anything other than dismissing the Count 2?

LORA: Yes, there is that.

COURT: That's the only thing that has been promised to you?

LORA: Yes.

COURT: Has anyone ever threatened or forced you to enter into this plea?

LORA: No.

COURT: In order to enter into this plea, you must waive some valuable rights that are associated with a trial. Those rights to have a jury trial in this case, and the right for the government to prove your charges beyond a reasonable doubt. You have a right to possess an attorney, the right to call your own witnesses and compel their appearance at trial, the right to testify on your own behalf or remain silent if you chose to exercise that right, and your right to appeal any negative ruling that might have been entered against you. Do you understand all of those rights?

LORA: Yes.

COURT: Do you waive those rights in this case so that you may enter into this plea?

LORA: Yes.

(CR DE# 78:4-5).

The record reveals that movant is not entitled to relief under claim 3 as it is apparent from the review of the record above that movant's guilty plea was entered freely, voluntarily, and knowingly

with the advice received from competent counsel and not involuntarily and/or unknowingly entered, as appears to now be suggested. See Boykin v. Alabama, 395 U.S. 238, 243 (1969); Brady v. United States, 397 U.S. 742, 748 (1970).[5] See also Hill v. Lockhart, supra; Strickland v. Washington, supra. 466 U.S. 668 (1984). Moreover, even if the movant was misinformed by counsel prior to the change of plea proceeding as to the strength of the government's case, given the stipulated factual proffer, coupled with the apparent thorough Rule 11 proceeding conducted by the court, there is nothing of record to suggest that the plea was anything other than knowing and voluntarily entered. Consequently, the movant cannot demonstrate that he suffered either deficient performance or prejudice under Strickland arising from any purported misadvice by counsel regarding the facts of his case.

As set forth in the stipulated factual proffer (CR-DE# 48), as well as in the movant's statement under oath during the change of plea hearing that he went over the factual proffer with his counsel and willingly signed it, as it was accurate (CV-DE# 78, p. 8), there was sufficient evidence to prove beyond a reasonable doubt that movant was guilty of the offenses charged in Count 1, 3 an 4. Thus, counsel's performance cannot be considered deficient for advising movant to plead guilty to Counts 1, 3, and 4 when the evidence clearly supported his conviction. See Cox v. McNeil, 638 F.3d 1356, 1362 (11th Cir. 2011) ("Because a petitioner's failure to show either deficient performance or prejudice is fatal to a

_____

[5]It is well settled that before a trial judge can accept a guilty plea, the defendant must be advised of the various constitutional rights that he is waiving by entering such a plea. Boykin v. Alabama, 395 U.S. 238, 243 (1969). Since a guilty plea is a waiver of substantial constitutional rights, it must be a voluntary, knowing, and intelligent act done with sufficient awareness of the relevant circumstances and likely consequences surrounding the plea. Brady v. United States, 397 U.S. 742, 748 (1970). A voluntary and intelligent plea of guilty made by an accused person who has been advised by competent counsel may not be collaterally attacked. Mabry v. Johnson, 467 U.S. 504, 508 (1984).

<u>Strickland</u> claim, a court need not address both Strickland prongs if the petitioner fails to satisfy either one of them") (internal quotation marks omitted).

Given the stipulated factual proffer narrated above, the movant cannot demonstrate that he was lied to or otherwise misadvised by counsel regarding the facts relating to his offense of conviction. His representations herein to the contrary are disingenuous and border on the perjurious. A defendant's sworn answers during a plea colloquy must mean something. Consequently, a defendant's sworn representations, as well as representation of his/her lawyer and the prosecutor, and any findings by the judge in accepting the plea, "constitute a formidable barrier in any subsequent collateral proceedings." <u>Blackledge v. Allison</u>, 431 U.S. 63, 73-74 (1977); <u>United States v. Medlock</u>, 12 F.3d 185, 187 (11th Cir.), <u>cert. den'd</u>, 513 U.S. 864 (1994); <u>United States v. Niles</u>, 565 Fed.Appx. 828 (11th Cir. May 12, 2014)(unpublished).[6]

A criminal defendant is bound by his/her sworn assertions and cannot rely on representations of counsel which are contrary to the advice given by the judge. <u>See</u> <u>Scheele v. State</u>, 953 So.2d 782, 785 (Fla. 4 DCA 2007)("A plea conference is not a meaningless charade to be manipulated willy-nilly after the fact; it is a formal ceremony, under oath, memorializing a crossroads in the case. What is said and done at a plea conference carries consequences."); <u>Iacono v. State</u>, 930 So.2d 829 (Fla. 4 DCA 2006)(holding that defendant is bound by his sworn answers during the plea colloquy and may not later assert that he committed perjury during the colloquy because his attorney told him to lie); <u>United States v.</u>

---

[6]"Unpublished opinion are not considered binding precedent, but they may be cited as persuasive authority." 11th Cir. R. 36-2. The Court notes this same rule applies to other Fed. Appx. cases cited herein.

Rogers, 848 F.2d 166, 168 (11ᵗʰ Cir. 1988)("[W]hen a defendant makes statements under oath at a plea colloquy, he bears a heavy burden to show his statements were false.").

In addition, the movant also cannot establish any prejudice resulting from counsel's allegedly deficient performance. The movant does not specifically contend that, but for counsel's advice, he would not have pled guilty and would have insisted on going to trial to face possible conviction on all four counts against him. Accordingly, "[i]f the movant (1) failed to allege in his motion to vacate that, but for counsel's advice, he would not have pled as he did or (2) otherwise failed to show special circumstances indicating that counsel's advice affected his decision to plead guilty, then his allegation of prejudice is insufficient to satisfy Strickland." Davis v. United States, 335 F.Appx. 825, 827 (11th Cir. 2009) (unpublished); see also Shatat v. United States, 2012 WL 640698, *4 (S.D. Fla. Feb. 27, 2012) (unpublished). The movant's failure here to contend that he would not have pled guilty and would have insisted on going to trial but for counsel's alleged deficiencies renders his claim legally insufficient to warrant relief under Strickland and Hill, supra.

Moreover, even if movant had alleged that he would not have pled guilty and would have gone to trial but for counsel's alleged deficiencies, such a claim would not be credible in light of the record in this case. Significantly, movant does not contend he is innocent of any of the offenses with which he was charged. The movant has not proffered any viable defense that he could have pursued at trial that would reasonably have resulted in an acquittal.

Under **claim 4**, the movant argues he should be re-sentenced

under United States v. Johnson, 135 S.Ct. 2551 (2015).

In Johnson, the Supreme Court held that "imposing an increased sentence under the residual clause of the **Armed Career Criminal Act** violates the Constitution's guarantee of due process." Johnson, __ U.S. at _____, 135 S.Ct. at 2563. In other words, Johnson "narrowed the class of people who are eligible for" an increased sentence under the Armed Career Criminal Act. In re Rivero, 797 F.3d 986 (11th Cir. Aug. 12, 2015)(citing Bryant, 738 F.3d at 1278). The Eleventh Circuit Court of Appeals, in binding authority, has also determined that Johnson "appl[ies] retroactively in the first post-conviction context." Mays v. United States, ___ F.3d ____, 2016 WL 1211420, at *1 (11th Cir. March 29, 2016) (published). More recently, however, on April 18, 2016, the Supreme Court made Johnson retroactively applicable to cases on collateral review. See Welch v. United States, 2016 WL 1551144, 578 U.S. ___ (April 18, 2016).

The Eleventh Circuit has recently determined that the law is unsettled regarding whether the rule announced in Johnson is applicable to convictions under **18 U.S.C. §924(c)**. See In Re: Ricardo Pinder, Jr., Case No. 16-12084-J (11th Cir. June 1, 2016)(published). In In re Pinder, Jr., the court noted that the language in §924(c) and §924(e) were "very similar" and both were "penal statutes," requiring higher sentences once a court decides that an offense constitutes a "crime of violence." Id at *1.

Lastly, In Beckles v. United States, Case No. 15-8544, 2016 WL 1029080 (2016), certiorari review was granted to decide whether the Johnson decision also applies to career offenders. See Beckles v. United States, Case No. 15-8544, 2016 WL 1029080 (2016). In Beckles

24

v. United States, 616 Fed. Appx. 415, 416 (11th Cir. 2015), the Eleventh Circuit, on remand from the Supreme Court, affirmed the defendant's **career offender** sentence. The Eleventh Circuit in Beckles determined that the Supreme Court's decision in Johnson v. United States, __ U.S. ___, 135 S.Ct. 2551, 192 L.Ed.2d 569 (2015) did not apply to the defendant, because it does not control guideline definitions, and reiterated that their decision in United States v. Hall, 714 F.3d 1270 (11th Cir. 2013), remains good law until a decision of the Supreme Court clearly on point changes it. Id. (citing Atl. Sounding Co., Inc. v. Townsend, 496 F.3d 1282, 1284 (11th Cir.2007) ("Under our prior panel precedent rule, a later panel may depart from an earlier panel's decision only when the intervening Supreme Court decision is 'clearly on point.'"))(emphasis added).

In light of the foregoing, Johnson is potentially applicable where a defendant is sentenced under 18 U.S.C. §924(c), as an Armed Career Criminal, or as a career offender. Review of the record in this case reveals that none of these scenarios exists in the movant's case. His PSI reveals the District Court did not apply any Chapter 4 enhancements. See (PSI ¶43). Furthermore, he was charged under 21 U.S.C. §846, 18 U.S.C. §922(g)(1), and 8 U.S.C. §1326(a). As a result, his reliance on Johnson is misplaced and does not warrant any relief.

It should further be noted that this court has considered all of the petitioner's arguments raised in his §2255 motion. (Cv-DE#1). See Dupree v. Warden, 715 F.3d 1295 (11th Cir. 2013)(citing Clisby v. Jones, 960 F.2d 925 (11th Cir. 1992)). For all of his claims, movant has failed to demonstrate he is entitled to vacatur of his convictions and sentences. Thus, to the extent a precise argument, subsumed within any of the foregoing grounds for relief,

was not specifically addressed herein, the claim was considered and found to be devoid of merit, warranting no discussion.

In conclusion, the record reveals that movant is not entitled to relief on any of the arguments presented as it is apparent from the extensive review of the record above that movant's guilty plea was entered freely, voluntarily and knowingly with the advice received from competent counsel and not involuntarily and/or unknowingly entered, as appears to now be suggested. See Boykin v. Alabama, 395 U.S. 238, 243 (1969); Brady v. United States, 397 U.S. 742, 748 (1970).[7] See also Hill v. Lockhart, supra; Strickland v. Washington, supra. 466 U.S. 668 (1984). The sentence imposed was also lawful and reasonable under the circumstances, and as such, counsel was not deficient and movant suffered no prejudice as a result of counsel's failure to pursue the nonmeritorious claim raised in this collateral proceeding.

## VI. Evidentiary Hearing

Movant is also not entitled to an evidentiary hearing on the claims raised in this proceeding. Movant has the burden of establishing the need for an evidentiary hearing, and he would only be entitled to a hearing if his allegations, if proved, would establish his right to collateral relief. See Schriro v. Landrigan, 550 U.S. 465, 473-75, 127 S.Ct. 1933, 1939-40, 127 S.Ct. 1933 (2007)(holding that if record refutes the factual allegations in

---

[7]It is well settled that before a trial judge can accept a guilty plea, the defendant must be advised of the various constitutional rights that he is waiving by entering such a plea. Boykin v. Alabama, 395 U.S. 238, 243 (1969). Since a guilty plea is a waiver of substantial constitutional rights, it must be a voluntary, knowing, and intelligent act done with sufficient awareness of the relevant circumstances and likely consequences surrounding the plea. Brady v. United States, 397 U.S. 742, 748 (1970). A voluntary and intelligent plea of guilty made by an accused person who has been advised by competent counsel may not be collaterally attacked. Mabry v. Johnson, 467 U.S. 504, 508 (1984).

the petition or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing). <u>See also</u> <u>Townsend v. Sain</u>, 372 U.S. 293, 307 (1963); <u>Holmes v. United States</u>, 876 F.2d 1545, 1553 (11th Cir. 1989), *citing*, <u>Guerra v. United States</u>, 588 F.2d 519, 520-21 (5th Cir. 1979)(holding that §2255 does not require that the district court hold an evidentiary hearing every time a section 2255 petitioner simply asserts a claim of ineffective assistance of counsel, and stating: "A hearing is not required on patently frivolous claims or those which are based upon unsupported generalizations. Nor is a hearing required where the petitioner's allegations are affirmatively contradicted by the record.").

## VII. <u>Certificate of Appealability</u>

As amended effective December 1, 2009, §2255 Rule 11(a) provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant," and if a certificate is issued "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. §2253(c)(2)." A timely notice of appeal must still be filed, even if the court issues a certificate of appealability. Rules Governing §2255 Proceedings, Rule 11(b), 28 U.S.C. foll. §2255.

After review of the record, Movant is not entitled to a certificate of appealability. "A certificate of appealablilty may issue ... only if the applicant has made a substantial showing of the denial of a constitutional right." <u>Id</u>. 28 U.S.C. §2253(c)(2). To merit a certificate of appealability, Movant must show that reasonable jurists would find debatable both (1) the merits of the underlying claims and (2) the procedural issues he seeks to raise.

<u>Slack v. McDaniel</u>, 529 U.S. 473, 478, 120 S.Ct. 1595, 146 L.Ed.2d 542 (2000). <u>See also</u> <u>Eagle v. Linahan</u>, 279 F.3d 926, 935 (11th Cir. 2001). Because the §2255 motion is clearly time-barred, Movant cannot satisfy the <u>Slack</u> test. <u>Slack</u>, 529 U.S. at 484.

As now provided by Rules Governing §2255 Proceedings, Rule 11(a), 28 U.S.C. foll. §2255: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue." If there is an objection to this recommendation by either party, that party may bring this argument to the attention of the Chief Judge in the objections permitted to this report and recommendation.

## VIII.  <u>Recommendations</u>

Based on the foregoing, it is recommended that the motion to vacate be DISMISSED as time-barred; alternatively that it be DENIED on the merits; that no certificate of appealability issue; and, that this case be closed.

Objections to this report may be filed with the District Judge within fourteen days of receipt of a copy of the report.

SIGNED this 12<u>th</u> day of December, 2016.

_____
UNITED STATES MAGISTRATE JUDGE

cc:  Manuel Dejesus Lora, <u>Pro Se</u>
     Reg. No. 53592-053
     Oakdale FCI
     Federal Correctional Institution
     Inmate Mail/Parcels
     Post Office Box 5000

28

Oakdale, LA 71463

Benjamin J. Widlanski
U.S. Attorney's Office
Major Crimes Section
99 NE 4th Street, 6th Floor
Miami, FL 33132
305.961.9342
Fax: 305.530.7976
Email: benjamin.widlanski@usdoj.gov